**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN ROBERT DECK, *Petitioner-Appellant*, | No. 13-55130 |
| v. | D.C. No. 8:11-cv-01767-MWF-FFM |
| MACK JENKINS, Chief Probation Officer, *Respondent-Appellee*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted
April 8, 2014—Pasadena, California

Filed September 29, 2014

Before: Sidney R. Thomas, Milan D. Smith, Jr.,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge M. Smith

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's dismissal of a 28 U.S.C. § 2254 habeas corpus petition challenging a conviction of an attempted lewd act upon a child under the age of 14, and remanded for further proceedings.

The panel took as established that prosecutorial error occurred, where the California Court of Appeal decided that the prosecutor, in closing argument, negated an essential element of intent under California law by "pushing defendant's intent to commit a lewd act on 'Amy' to, potentially, 'next week,' or in 'two weekends' or to 'just some point in the future.'" The California Court of Appeal concluded that the misstatements were not prejudicial.

The panel found itself in virtual equipoise as to the harmlessness of the error, where the comments were not inadvertent or isolated and went to the heart of the defense, the lawyers' diametrically opposed statements of the law in closing arguments confused the jury, a corrective instruction was not given, the jury's request for clarification was not answered, and the written jury instructions did not address the subject of the jury's confusion; and where the panel could not say that there was overwhelming evidence that the defendant intended to commit a lewd act on the specific night in question.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that the prosecutor's misstatements amounted to constitutional trial error under clearly established federal law as determined by the Supreme Court, and had grave doubt as to whether the error had a substantial and injurious effect or influence on the jury's verdict.

Dissenting, Judge M. Smith wrote that the majority flouts clear Supreme Court AEDPA precedent in order to justify its holding that a state court's decision is incorrect.

## COUNSEL

Charles M. Sevilla (argued), Law Office of Charles Sevilla, San Diego, California, for Petitioner-Appellant.

Kamala D. Harris, Julie L. Garland, Kevin Vienna (argued), and David Delgado-Rucci, Office of the Attorney General of California, San Diego, California, for Respondent-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Stephen Deck was convicted in California of one count of an attempted lewd act upon a child under the age of 14. After exhausting review of his conviction in state court, he petitioned the federal district court for habeas relief under 28 U.S.C. § 2254, arguing that prosecutorial misstatements made during rebuttal closing argument deprived him of a fair trial. The district court dismissed Deck's petition. We reverse the district court's judgment and remand for further proceedings.

## BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "state court findings of fact are presumed correct unless rebutted by clear and convincing evidence." *Gonzales v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). Both Deck and the State agree that the California Court of Appeal (CCA) correctly framed the underlying facts of the case. Our opinion relies on, and quotes at length from, the CCA's opinion in *People v. Deck*, No. G043434, 2011 WL 2001825 (Cal. Ct. App. May 24, 2011).

### The Alleged Crime

In February 2006, the Laguna Beach Police Department collaborated with volunteers from an organization called Perverted Justice "on a sting operation to identify and arrest adults using the Internet to meet minors for sex." *Id.* at *1. "After online conversations confirmed the adult's intent, . . . decoys arranged a meeting between the adult and fictitious minor at an apartment," where the adult would be arrested. *Id.*

Deck, who was then a lieutenant with the California Highway Patrol, began chatting online with a fictitious girl named "Amy."[1] *Id.* Amy represented to Deck that she was 13 years old, and her online profile included a photograph of an actual 13-year-old girl. *Id.* The two exchanged sexually suggestive messages, and Deck expressed an interest in taking photographs of Amy. *Id.* at *1–2. They arranged a

---

[1] We use "Amy" to refer to the Perverted Justice volunteer who played this role.

meeting for an upcoming Saturday. *Id.* at *2. Amy asked Deck to come to her apartment, but Deck said he was "not comfortable meeting at your house" and proposed meeting in public. *Id.* (internal quotation marks omitted). "Deck also suggested that after their first date, if their chemistry remained as good as it seemed during their chats, they would arrange another date and engage in some of the sexual activity they discussed online." *Id.* But he said: "'I probably won't be able to keep my hands off of you.'" *Id.* On the day of their planned meeting, Deck claimed not to be feeling well but "promised to stop by [Amy's] apartment for their first meeting," at a time when Amy's mother was not around. *Id.* at *3. In a subsequent online chat, he asked Amy to meet him "in a public place close to her apartment." *Id.* He said he would be bringing her a piece of pie. *Id.* "Before signing off his computer, Deck added, 'Remember I am sick so no kissing or nothing. Just bringing you your pie.'" *Id.*

The CCA opinion described what happened next:

Deck made the 45 mile drive from his residence to "Amy's" apartment, arriving around 8:35 p.m. He parked in the apartment complex's parking lot and walked to the park for his rendezvous with "Amy." Spotting a young female sitting at a picnic table in the park, Deck approached and asked whether she was "Amy." The female responded by asking whether he was "Steve." When Deck acknowledged his identity, the police arrested him.

Investigators searched Deck and found a digital camera and the piece of pie he

promised to bring "Amy." They also searched Deck's car, where they found a MapQuest printout with directions to "Amy's" apartment and six packaged condoms past the listed expiration date.

*Id.*

## **Procedural History**

Deck was charged with attempt to commit a lewd or lascivious act ("lewd act") upon a child. The CCA explained that, under California law:

An attempt to commit a lewd act upon a child requires both an intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of [the defendant] or the child and . . . a direct if possibly ineffectual step toward that goal . . . .

For an attempt, the overt act must go beyond mere preparation and show that the [defendant] is putting his or her plan into action; it need not be the last proximate or ultimate step toward commission of the crime or crimes, nor need it satisfy any element of the crime. However, as we have explained, [b]etween preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after

> the preparations are made. [I]t is sufficient if it is the first or some subsequent act directed towards that end after the preparations are made.

*Id.* at *7 (alterations in original) (citations and internal quotation marks omitted). Deck was convicted after a jury trial and sentenced to 365 days in county jail and five years formal probation.

One of Deck's arguments to the CCA was that the prosecutor's closing argument misstated the law of attempt. *Id.* at *11. The CCA agreed, but held that the prosecutor's "lone misstatement" of the law was rendered harmless by the trial court's correct jury instructions. *Id.* Because the issue in this appeal is highly fact-specific, it is worth providing the CCA's description and analysis of the prosecutor's error in (close to) its entirety.

The CCA first summarized the prosecutor's statements as follows:

> On rebuttal, the prosecutor agreed with defense counsel that "I need to prove to you that [Deck] took a direct, but ineffectual step on or about February 18, 2006." Deck focuses on a handful of ensuing comments as the basis for his misconduct claim that the prosecutor misstated the law of attempt.

> Specifically, Deck zeroes in on four sentences, italicizing a few of the prosecutor's words in just two sentences of his closing argument, as follows: "I don't have to prove

to you that he was going to commit a lewd act on or about February 18th, 2006 . . . . [¶] But even if his intent was just to meet her, get to know her, break the ice and follow the next day, *the next week, maybe [in] two weekends* when mom's gone, again, as long as he took a direct, but ineffectual step towards that goal, that is all I need. [¶] I don't need to prove to you that he was going to commit a lewd act on that day, *just some point in the future* direct and ineffectual step that day [sic: garbled diction] . . . . He was on that day going to commit a lewd act with Amy." (Italics added.)

*Id.* at *11 (alterations in original) (citations and some internal quotation marks omitted).

The CCA next discussed whether the prosecutor's statements were erroneous:

In this excerpt isolated by defendant, the prosecutor's first and final sentences present no problem. First, the prosecutor did not have to prove Deck "was going to commit" a lewd act with "Amy" in the sense that he would be successful; after all, lack of success defines an attempt. As the prosecutor explained just a few sentences later: "I don't have to prove to you that he was going to actually succeed in committing the lewd act on that day." And, in defendant's excerpt, the prosecutor's final sentence properly focused the jury's attention on the day he met with "Amy," emphasizing,

"He was *on that day* going to commit a lewd act with Amy." (Italics added.) This was the prosecutor's repeated emphasis, arguing several times, for example, that defendant was "[d]efinitely going down there to engage in a lewd act, lewd contact with Amy"; "If Amy was a real 13–year–old girl, [in] the defendant's own[] words, he wouldn't be able to keep his hands off of her"; "He was on that day going to commit a lewd act with Amy"; and characterizing the idea that Deck would "just see her that day" as "baloney."

*Id.* (alterations in original).

The CCA concluded that the prosecutor misstated the law:

The prosecutor erred . . . by suggesting an intent to engage in a lewd act at "just some point in the future" or "the next week, maybe [in] two weekends" sufficed. As our Supreme Court has explained, to establish an attempt the defendant's overt act "must go beyond mere preparation and show that the [defendant] is putting his or her plan into action." Indeed, the acts of the defendant must go *so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances.*

. . . .

Here, pushing defendant's intent to commit a lewd act on "Amy" to, potentially,

> "next week" or in "two weekends" or to "just
> some point in the future" negates the essential
> element necessary to constitute an attempt
> . . . . The merely speculative possibility of a
> potential future rendezvous is inconsistent
> with the inevitable nature of an attempt, where
> the offense will be accomplished unless
> frustrated by extraneous circumstances or
> absent an intervening force.

*Id.* at \*12 (alterations in original) (citations and some internal
quotation marks omitted).

Having decided that the prosecutor's misstatements of
California law negated an essential element of attempt, the
CCA concluded that the misstatements were not prejudicial
to Deck:

> [T]he prosecutor's errant gloss on the law of
> attempt does not require reversal. First, it was
> an isolated departure in a few stray words and
> not the focus of the prosecutor's argument,
> which properly remained on Deck's clear
> intent, coupled with the steps he took, to
> commit a lewd act with the victim on the
> weekend he actually met with her.
>
> More importantly, the trial court properly
> instructed the jury on the relevant principles.
> The court instructed the jury the necessary
> "direct step" to constitute an attempt "requires
> more than merely planning or preparing to
> commit" the target offense, but instead "goes
> beyond planning or preparation" with a

"direct movement towards the commission of the crime *after* preparations are made."

*Id.* (citation omitted).

The CCA reasoned that, based solely on these jury instructions:

[T]he jury knew it was not enough to plan or prepare to commit a lewd act at a potential *later* rendezvous. Rather, the attempt must consist of "an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt." We presume the jury followed these instructions.

*Id.*

The CCA recognized that Deck's argument relied heavily on the jury's request for clarification of the law relating to the prosecutor's closing rebuttal argument:

[A]bout an hour into deliberations, the jury sent the trial court a note asking it to "'[c]larify [the] law as it relates to whether defendant did not have to do anything that day, only attempted [sic] to put it into play.'" The trial court excused the jury an hour early for the weekend recess to discuss the matter with counsel, and then excused the jury after only an hour of deliberation on Monday because defense counsel became ill. At the outset of deliberations on Tuesday, the trial

court seated an alternate juror to replace a
juror who had called in sick.

The trial court had discussed with counsel
how to respond to Friday's jury note but,
given deliberations had to begin anew with
the substitute juror, the trial court instructed
the jury as follows: "I know that there was a
previous question sent out by the foreperson,
Juror # 9. In light of the fact I have just given
you this instruction that you have to start all
over again, disregard past deliberations, you
need to follow that instruction. If you have
any further questions that you want answered
once you start deliberating with the jury, send
that out in the question format and we will
answer it for you."

*Id.* at *13 (some internal quotation marks omitted).

Finally, the CCA reasoned that the jury's failure to
resubmit its question (or a similar one) after restarting
deliberations demonstrated that the jury was not misled by the
prosecutor's misstatements:

The jury, presumably having taken a fresh
look—or a first look in the case of the new
juror—at the trial court's instructions, had no
further questions for the trial court and
reached a verdict. Deck does not dispute the
trial court's instructions concerning attempt
correctly stated the law. We must presume
the jury understood and followed those
instructions. Consequently, there is no basis

to conclude the jury disregarded the trial court's instructions and instead fixated on an isolated comment by the prosecutor.

*Id.*

The CCA's version of events contains most of the details relevant to this appeal, but two additional points are helpful. First, Deck's trial defense was that he lacked the mental intent to engage in a lewd act "on that date"; defense counsel emphasized this point heavily during his closing argument. The prosecutor recognized the importance of this defense argument and told the judge that the purpose of his rebuttal was to dispute it. Second, though the CCA described the prosecutor's misstatements as an "isolated departure in a few stray words," there was another important misstatement by the prosecutor during rebuttal: "Even if you buy this baloney just see her that day, not touching her, stay five feet away from her, follow up the next day if they got along, then commit the lewd act, that is sufficient under the law for the defendant to be guilty."

Deck filed a petition for review to the California Supreme Court, which denied review. Deck then filed a petition in federal court for writ of habeas corpus pursuant to 28 U.S.C. § 2254. A federal magistrate judge recommended dismissal of the petition with prejudice, and the district court adopted the magistrate's findings and recommendations. Deck appeals.

## JURISDICTION AND STANDARD OF REVIEW

We review a district court's denial of a § 2254 habeas corpus petition de novo. *Gonzalez v. Duncan*, 551 F.3d 875,

879 (9th Cir. 2008).  Looking through the district court's decision, this court reviews the last reasoned state-court decision, which in this case is the opinion of the CCA.  *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

AEDPA allows for habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  An error that occurs during the presentation of a case to the jury, including prosecutorial misconduct, is a trial error.  *See Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012); *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997). Whether trial error amounts to a constitutional violation depends on the extent to which it renders the proceedings unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

A constitutional trial error will not warrant habeas relief unless the violation "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).  Because it is more stringent, the *Brecht* standard "obviously subsumes" the AEDPA standard for review of a state court determination of the harmlessness of a constitutional violation.  *Fry v. Pliler*, 551 U.S. 112, 120 (2007).  The Court in *Fry* held that because it "makes no sense to require formal application of *both* tests," *Brecht* alone should be applied.  *Id.*

Here, the state appellate court decided that "pushing defendant's intent to commit a lewd act on 'Amy' to, potentially, 'next week' or in 'two weekends' or 'just some point in the future' negate[d] the essential element necessary to constitute an attempt."  *Deck*, 2011 WL 2001825, at *12.

In other words, the CCA established that a trial error occurred through the prosecutor's misstatement of California law. We do not review this ruling, nor do we review the state court's interpretation of the California law of attempt as applied to Deck's case. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Our first task is to determine whether the established trial error amounts to a constitutional violation under clearly established federal law as determined by the Supreme Court. Because the state court has already established that a trial error occurred and the constitutional dimension of the error turns entirely on the issue of prejudice, we apply *Brecht* "without regard for the state court's harmlessness determination." *See Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010); *see also Stouffer v. Trammell*, 738 F.3d 1205, 1227–28 (10th Cir. 2013) (reviewing state court holding that trial error occurred but was not prejudicial under the *Brecht* standard). The relevant inquiry under *Brecht* is whether the error substantially and injuriously influenced the jury's decision. *See O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "While there is no burden of proof *per se*, 'we look to the State to instill in us a 'fair assurance' that there was no effect on the verdict.'" *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (alteration and citation omitted). If the record is so evenly balanced that a "conscientious judge is in grave doubt as to the harmlessness of an error," the petitioner must prevail. *O'Neal*, 513 U.S. at 437; *see also id.* at 435 (defining "grave doubt" as being in "virtual equipoise as to the harmlessness of the error").

## DISCUSSION

## I. Clearly Established Federal Law on Prosecutorial Misstatements

It is clearly established under Supreme Court precedent that a prosecutor's "misleading . . . arguments" to the jury may rise to the level of a federal constitutional violation. *Sechrest v. Ignacio*, 549 F.3d 789, 807 (9th Cir. 2008) (citing *Darden*, 477 U.S. at 181–82); *see also Allen v. Woodford*, 395 F.3d 979, 997 (9th Cir. 2005) (citing *Darden* for conclusion that improper prosecutorial argument may violate federal constitutional rights). The Supreme Court recently reaffirmed that *Darden* is the "clearly established Federal law" relating to a "prosecutor's improper comments" for purposes of AEDPA review. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (internal quotation marks omitted).[2] "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 181); *see also Caldwell v. Mississippi*, 472 U.S. 320, 340 (1985). The "clearly established Federal law" from *Darden* is that prosecutorial misconduct amounts to a constitutional violation if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation marks omitted). The Court has

---

[2] The dissent suggests that we treat *Parker* itself as "clearly established federal law." In fact, we cite *Parker* to illustrate that the rule from *Darden* is clearly established—and was at the time of the state court's decision. *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) (recognizing that persuasive authority "may help us determine what [Supreme Court] law is 'clearly established'").

acknowledged that "the *Darden* standard is a very general one," *Parker*, 132 S. Ct. at 2155, but AEDPA "recognizes . . . that even a general standard may be applied in an unreasonable manner," *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). A federal court may find "an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

We recognize that "clearly established federal law" for purposes of AEDPA review includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). Therefore, we do not construe the reasoning used in prior Supreme Court decisions as an "elaborate, multistep test." *Parker*, 132 S. Ct. at 2155. No single consideration should be treated as either necessary or sufficient to reach a decision. *See id.* at 2155–56 (holding that appellate court's use of multistep test for unconstitutionality of prosecutorial misconduct improperly departed from the "highly generalized standard" in *Darden*).

Holding that a condemnatory closing argument did not deprive the petitioner in *Darden* of a fair trial, the Supreme Court reasoned that the prosecutor "did not manipulate or misstate the evidence" and that the trial court properly instructed the jury "that the arguments of counsel were not evidence." 477 U.S. at 181–82. The Court also considered the "heavy" weight of the evidence against the petitioner, which "reduced the likelihood that the jury's decision was influenced by argument." *Id.* at 182.

The Supreme Court elsewhere observed that:

> arguments of counsel generally carry less
> weight with a jury than do instructions from
> the court. The former are usually billed in
> advance to the jury as matters of argument,
> not evidence, and are likely viewed as the
> statements of advocates; the latter, we have
> often recognized, are viewed as definitive and
> binding statements of the law. Arguments of
> counsel which misstate the law are subject to
> objection and to correction by the court. This
> is not to say that prosecutorial
> misrepresentations may never have a decisive
> effect on the jury, but only that they are not to
> be judged as having the same force as an
> instruction from the court. *And the arguments
> of counsel, like the instructions of the court,
> must be judged in the context in which they
> are made*.

*Boyde v. California*, 494 U.S. 370, 384–85 (1990) (emphasis
added) (citations omitted). We recognize that "[a] slight
misstatement of law by a prosecutor can be rendered harmless
by the court's proper instruction to the jury." *United States
v. Mendoza*, 244 F.3d 1037, 1045 (9th Cir. 2001). And under
Supreme Court precedent, a jury is presumed to follow the
court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234
(2000).

In the dissent's view, the CCA decided that no federal
constitutional error occurred in this case, and the CCA's
decision is entitled to AEDPA deference independent from
the deference already encompassed in the *Brecht*

harmlessness standard. Controlling authority requires that we follow a different approach.

The heading of the relevant section of the CCA's decision was: "The Prosecutor's Misstatement Concerning Attempt Was Harmless." The CCA agreed with Deck that the prosecutor misstated the law of attempt but held that "this lone misstatement—counteracted by the trial court's correct instructions—was harmless."[3] *Deck*, 2011 WL 2001825, at *11. We accept the CCA's interpretation of California law and take as established that prosecutorial error occurred. The CCA did not expressly reach the question whether this error amounted to a violation of federal due process, so we must consider whether the CCA's harmlessness determination amounted to an implied ruling that no federal constitutional violation took place.

The Supreme Court has defined a "fair trial" as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In *Hein v. Sullivan*, 601 F.3d 897 (9th Cir. 2010), our court summarized the factors the Supreme Court evaluated in *Darden* to determine whether the petitioner's trial was "fair," and then observed that consideration of the *Darden* factors "appears to be equivalent to evaluating whether there was a 'reasonable probability' of a different result." *Id.* at 914–15. California courts use the "reasonable probability" standard to evaluate whether prosecutorial misconduct renders a trial fundamentally unfair under state law. *See People v. Partida*, 122 P.3d 765, 771 (Cal. 2005); *People v. Espinoza*, 838 P.2d 204, 212 (Cal. 1992). We therefore conclude that although

---

[3] As explained below, the prosecutor's error was more than a single "lone misstatement," but this point is not relevant here.

the CCA did not independently evaluate the federal
constitutional question, its harmlessness analysis can be seen
as an implied ruling that no federal constitutional violation
occurred because the prosecutor's error was harmless.

The dissent implies that we should apply AEDPA
deference to decide whether the *type* of prosecutorial
misconduct in Deck's case rose to the level of a federal due
process violation, in addition to the deference due to the
CCA's evaluation of prejudice. The dissent's concern is
misplaced: the CCA did not hold that the type of misconduct
here—misstatements of the law in closing argument—may
not rise to the level of a due process violation. Instead, the
CCA impliedly held that no due process violation occurred
because the error was harmless. Under both California and
federal law, prosecutorial misconduct renders a trial
"fundamentally unfair" (i.e., a violation of due process) only
when it was not harmless because there was a reasonable
probability of a different result absent the error. The dissent's
approach is inconsistent with Supreme Court directives.
Beyond harmlessness, there is no additional state court
determination regarding the federal due process claim to
which we could defer here. AEDPA deference to the CCA's
harmlessness determination is already subsumed within the
*Brecht* standard.[4]  *See Fry*, 551 U.S. at 120.

The dissent interprets our opinion as "rest[ing] on [the]
conclusion that a defendant's right to due process of law is

---

[4] For this reason, if we were to hold that the error in Deck's trial was not
harmless under the *Brecht* standard, this would necessarily entail the
conclusion that the CCA's ruling with regard to harmlessness was
unreasonable under the deferential AEDPA standard. *See* 28 U.S.C.
§ 2254(d)(1); *Fry*, 551 U.S. at 120.

violated when the prosecutor misstates the law in his closing argument, even when the judge correctly instructs the jury on the relevant legal principles." But nowhere do we suggest that every misstatement of the law in closing argument rises to the level of a due process violation. This fact-intensive determination must be made on a case-by-case basis. Where the state court has determined that prosecutorial misconduct occurred, and where the constitutional dimension of the error completely overlaps with the harmlessness determination, there is nothing left to do but apply the *Brecht* standard.

AEDPA review and the *Brecht* standard are both highly deferential, but this does not mean that we are to superimpose new layers of deference when applying a general rule like the one from *Darden*. To do so would needlessly complicate our doctrine and contravene controlling authority. Where, as here, our review is limited to assessing a state court's conclusion regarding prejudice, Supreme Court and circuit precedents require us to apply *Brecht* "without regard for the state court's harmlessness determination." *Pulido*, 629 F.3d at 1012; *see also Fry*, 551 U.S. at 119–20.

## II. Application of Federal Law to Deck's Case

### A. The prosecutor's misstatements were not inadvertent or isolated.

In its analysis of prejudice, the CCA reasoned that "the prosecutor's errant gloss on the law . . . . was an isolated departure in a few stray words and not the focus of the prosecutor's argument." *Deck*, 2011 WL 2001825, at \*12; *see also* 28 U.S.C. § 2254(e)(1). But it is clear the erroneous assertions of law in the prosecutor's closing rebuttal

argument were not mere "stray words;" they were a direct
response to the central theory of Deck's case.

The contention that Deck lacked the intent to commit a
lewd act on the night of the meeting was absolutely central to
his defense. In his closing argument, defense counsel told the
jury that, while Deck's conduct may have been reprehensible,
it did not constitute attempt. He stressed that Deck's defense
was a technical one, telling the jury that this was a case where
law and justice might not be "on the same side" and "don't
necessarily meet." Defense counsel expressly argued to the
jury that "Mr. Deck never had the intent in the first place to
engage in a lewd act" on the date of the meeting, and that
"Mr. Deck had a definite and unambiguous intent *not* to
engage in a lewd act *on that date*" (emphasis added).
Leaving no doubt that the jury would be required to examine
the precise elements of the law of attempt in California,
defense counsel argued: "Like it or not[,] the law is on Mr.
Deck's side in this case. Like it or not." The temporal
requirement for Deck's intent was not a side issue in his trial;
it went to the heart of Deck's defense, and his counsel made
this abundantly clear to the jury.

There is no doubt the trial court recognized that the
defense and prosecution made directly conflicting statements
to the jury regarding the temporal component of intent as
relevant to attempt. In fact, the prosecutor's own statements
about the purpose of his rebuttal closing argument contradict
the CCA's suggestion that his misstatements were stray
words or inadvertent misstatements. In a discussion with trial
counsel after the jury sent its note requesting clarification on
the temporal requirement for attempt, the trial court
acknowledged that the lawyers gave irreconcilable statements
of the law to the jury, and the prosecutor claimed that his

rebuttal was necessary to convey the State's position on what the law required the State to prove:

> The Court: You did not object at all to [defense counsel's] argument.  He clearly argued to the jury that he had to commit a lewd act that day, that he had the intent to do that.
>
> [Prosecutor]: *That is what my rebuttal was for.  I am arguing what the law is*.

(emphasis added).  The prosecutor's view of what the law required him to prove is *precisely* the one the CCA later rejected.  Recognizing that the temporal component of attempt was pivotal to Deck's defense, the trial judge stated that he would "even entertain additional closing argument on [the] issue based on the fact that there were two different things argued to the jury," and that it was "not surprising" that the jury asked for clarification in light of this difference.

The CCA's characterization of the prosecutor's misstatements as brief and errant departures from an otherwise sound argument is contradicted by the record.  The State's rebuttal unambiguously repeated several erroneous statements regarding what California law required to convict Deck.  The misstatements were the counterpunch to Deck's "like it or not" closing argument.  The prosecutor told the jury that although the evidence showed that Deck intended to engage in lewd conduct that day, they could convict Deck *even if they agreed with the defense that the evidence raised reasonable doubt about whether Deck had this intent*:

But even if his intent was just to meet her, get to know her, break the ice and follow up the next day, the next week, maybe two weekends when mom's gone, again, as long as he took a direct, but ineffectual step towards that goal, that is all I need.

I don't need to prove to you that he was going to commit a lewd act on that day, just some point in the future [sic] direct and ineffectual step that day. So the best case scenario for the defense is baloney. . . . Even if you buy this baloney[,] just see her that day, not touching her, stay five feet away from her, follow up the next day if they got along, then commit the lewd act, that is sufficient under the law for the defendant to be guilty.

The prosecutor's repetition of the phrase "even if" unquestionably shows that he presented alternative theories of the case on which the jury could rely to convict Deck, rather than making a passing incorrect statement of his primary argument. The prosecutor's unequivocal assertions—"that is all I need" and "that is sufficient under the law for the defendant to be guilty"—leave no doubt that he was arguing, incorrectly, that the jury could still convict Deck even if it found doubt about whether Deck intended to engage in a lewd act on the night of the meeting.

The manner in which the prosecutor presented his alternative theory, using statements like "sufficient under the law," created a significant likelihood that the comments would be "viewed as definitive and binding statements of the law," rather than merely as argument. *See Boyde*, 494 U.S.

at 384. We need not engage in speculative Monday morning quarterbacking to know that the rebuttal argument may have seriously misled the jury; the jury's note to the trial court after the start of deliberations went straight to this contested point of law. It asked the court to "[c]larify law as it relates to whether defendant did not have to do anything that day only attempt to put it into play." The significance of this request is discussed further below.

**B.  The trial court did not correct the prosecutor's misstatements.**

"Arguments of counsel which misstate the law are subject to objection and to correction by the court," *id.*, but here the trial court did not correct the prosecutor's misstatements. Nor did the court answer the question posed in the jury's note, because the jury was subsequently told to start deliberations over after a juror became sick and had to be excused. Notably, even the trial court did not expect the jury to find the answer to its question in the written set of jury instructions. The record shows the judge anticipated that the jury would ask the same question, and the court was diligently reviewing the applicable California case law and working with counsel to draft a response when the jury reached a verdict. That the trial court did not issue a correction before the verdict was returned weighs in favor of finding a constitutional violation, because, as we have recognized, improper prosecutorial statements cannot be neutralized by instructions that do not in any way address "the specific statements of the prosecutor." *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) (internal quotation marks omitted).

The CCA emphasized that "the trial court properly instructed the jury on the relevant principles" of the law of attempt. *Deck*, 2011 WL 2001825, at *12. The written instructions made it clear that the State needed to prove that Deck: (1) "took a direct but ineffective step toward committing" the crime, and (2) "intended to commit" the crime. The CCA held that this instruction correctly stated the law, and we do not review this holding.[5]  *See Bradshaw*, 546 U.S. at 76.

But the CCA went on to conclude that, based on the written instructions alone, "the jury knew it was not enough to plan or prepare to commit a lewd act at a potential *later* rendezvous." *Deck*, 2011 WL 2001825, at *12. This conclusion does not comport with the record. The instructions entirely failed to address the specific misstatements made by the prosecutor; they gave the jury no direction at all regarding whether the law required the prosecutor to show that Deck intended to commit a lewd act on the night of the meeting. The jury could have concluded

---

[5] The instructions elaborated:

> A direct step requires more than merely planning or preparing to commit [the offense] or obtaining or arranging for something needed to commit [the offense].  A direct step is one that goes beyond planning or preparation and shows that a person is putting his plan into action.  A direct step indicates a definite and unambiguous intent to commit [the offense].  It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.

that the instructions were perfectly compatible with the prosecutor's repeated assertions that Deck could be found guilty even if the meeting was merely a step in a plan to commit a lewd act with Amy in the near future. The jury was told that, under the State's alternative theory, the purpose of the initial meeting would have been to confirm Amy's identity before arranging a future sexual encounter.

The CCA's conclusion that the jury correctly understood the law of attempt is further undermined by the differing interpretations of the law adhered to by the trial court and counsel. The prosecutor believed that the instructions permitted his view of the law, but the CCA later held that the prosecutor was incorrect. Defense counsel insisted the law required more. Tellingly, the trial judge sided with the prosecutor and not the defense. After going round and round on the issue with counsel, the judge stated:

> [M]y analysis of it after reading [California] cases is that the People are correct in their analysis of the law. *I do not think it has to be, the ultimate step, intend to commit it that day*. He had to have the specific intent to commit the lewd act at or about the time he took the direct step. That doesn't mean he had to have the intent to commit child abuse that day, on that particular day. I think that is accurate. But it's very, very difficult to phrase that in an instruction format that it's clean and that's understandable. *I mean if the lawyers can't even agree, how do we expect jurors or layperson to grasp it*[?]

(emphases added). The italicized sentences in this statement encapsulate a separate problem with the CCA's analysis: it is difficult to imagine that "the jury knew" something from the jury instructions that even the trial judge who gave the instructions did not know.

The trial judge and counsel plainly agreed that the jury's question was not addressed by the instructions, and they expected the jury to come back with another version of its initial question after it restarted deliberations with the new juror. Working to craft an answer to the question when the bailiff announced there was a verdict, the court seemed surprised that the jury could have reached a verdict without having its earlier question answered:

> The Bailiff: There's a verdict, your Honor.
>
> The Court: There is a verdict?
>
> The Bailiff: Yes.
>
> The Court: Well, that solves that issue.

The dissent relies on the presumption that a jury understands and follows the court's instructions. We recognize the existence of this well-established presumption, but it is not dispositive here for a simple reason the dissent fails to acknowledge: the jury instructions on attempt did not address the temporal issue that was the gravamen of the prosecutor's misstatements. The instructions did say that to be convicted of attempt, the defendant must put his "plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt." But this provided no guidance as to whether, in

order to convict Deck, his plan would have to be completed that night, or, as the prosecutor incorrectly told the jury, Deck merely had to put in motion a plan to complete the act "the next day, the next week, maybe two weekends [later]." The trial judge's interpretation of the instructions in a manner inconsistent with the CCA's determination of California law vividly illustrates that, even if the jury read the instructions carefully and made their best effort to follow them, they could no more than guess at the correct rule of California law. To be clear, we do not believe the jury failed to follow the trial court's directions in the sense that it *disregarded* the court's instructions. Rather, the record shows that the most diligent of juries would have had no way of divining whether the prosecutor's interpretation of the law of attempt was incorrect from the instructions given to them.[6]

## C. The evidence concerning the temporal aspect of Deck's intent was not overwhelming.

In *Darden*, the Supreme Court reasoned that overwhelming evidence "reduced the likelihood that the jury's decision was influenced by" the prosecutor's improper argument in that case. 477 U.S. at 196. The weight of the

---

[6] Deck's case is analogous to cases where the jury has been "instructed on multiple theories of guilt, one of which is improper." *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008). In such cases, the reviewing court applies the *Brecht* analysis without presuming that the jury followed the correct theory. *See id.* at 61–62. Here, the prosecutor and defense counsel gave contradictory interpretations of the law of attempt, and the instructions themselves did not resolve the contradiction. Under these circumstances, we agree with what our dissenting colleague wrote in a previous decision: "While we presume jurors follow the instructions they are given, we cannot equally assume they can sort out legal contradictions." *Doe v. Busby*, 661 F.3d 1001, 1023 (9th Cir. 2011) (M. Smith, authoring judge).

evidence against Deck is an important consideration, but it does not change the outcome on the facts presented here.

On one hand, the jury could have found that Deck intended to engage in lewd touching with Amy on the day of the meeting: he had previously discussed performing sexual acts with her in graphic detail, he knew that her mother was not at home, and he had condoms in his car. "A rational juror reasonably could conclude Deck's comments [about feeling sick, wanting to meet in public, and cautioning 'no kissing or nothing' at the meeting] served merely as a ploy to convince 'Amy' to meet him or as a prudent precaution Deck took to verify 'Amy's' age and identity." *Deck*, 2011 WL 2001825, at *9. Furthermore, Deck's background in law enforcement—he was a lieutenant with the California Highway Patrol at the time—makes it more likely that he was playing it safe in his communications with Amy to avoid exactly this type of sting. The prosecutor argued along these lines in closing rebuttal that Deck "knew what the defense was" to the charge and "tried to create his own defense."

The CCA also emphasized that only minimal physical contact was required to support conviction for committing a lewd act. The intended touching need not have been overtly sexualized to an outside observer. *Id.* at *10 ("[T]he jury need only have found Deck intended to touch 'Amy' with the intent to arouse himself or her."). In an earlier chat discussion, Deck conceded that although he wanted to meet in public for their first date and not engage in sexual activity: "I probably won't be able to keep my hands off of you." *Id.* at *2 (internal quotation marks omitted).

On the other hand, the jury could have believed that the prosecutor only proved his alternative theory that Deck

intended to commit lewd acts with Amy at a later meeting. The jury could have believed Deck wanted to avoid contact with Amy on the day he was arrested because he was grooming Amy for future contacts and wanted to exercise caution by having a more limited first meeting, in public, to assess the situation. The jury might even have believed that Deck did not intend contact or touching on that particular day because he was ill, as he claimed. That Deck was carrying a camera and had condoms in his car shows preparation, but these facts do not establish when he planned to follow through. The prosecutor's assurance that the jury could convict "even if" it believed the prosecution's alternative theory of the case could have influenced the jury to find "attempt" based on an anticipated future rendezvous with Amy. If the jury had not been on the fence on this question, it is unlikely it would have sent its note to the court.

## D. There is "grave doubt" about the harmlessness of the error.

The jury's request for clarification, above all, leaves us with "grave doubt" about whether the prosecutor's comments had a substantial and injurious effect or influence on the verdict. The jury's note asked the trial court to "clarify [the] law as it relates to whether defendant did not have to do anything that day[,] only attempt to put it into play."[7] Even the State concedes on appeal that "on some level, [the prosecutor's] statements resonated with the jury in that they provoked a question from the jury." Rather than disputing

---

[7] The jury's request for clarification on the law of attempt also included the following language, which was crossed out near the top of the blank space: "In closing arguments, Prosecutor . . . [illegible] . . . we need it read back."

that the prosecutor's closing rebuttal argument perplexed the jury, the State contends that the jury's failure to resubmit its question to the trial court after restarting its deliberations suggests "the jury was satisfied with the original, correct instructions on the crime of attempt when it rendered its verdict." But the judge's oral direction in response to the jury's note was also confusing. The judge orally directed the jury:

> I know that there was a previous question sent out by the foreperson, Juror # 9. In light of the fact I have just given you this instruction that you have to start all over again, disregard past deliberations, you need to follow that instruction. If you have any further questions that you want answered once you start deliberating with the jury, send that out in the question format and we will answer it for you.

*Id.* at *13. The CCA accepted that the jury satisfied itself about the temporal requirement for attempt by looking at the trial court's written instructions. *Id.* But as explained, the written instructions provided no specific guidance on this point. Worse, the jury may have understood the judge's oral direction to mean that the court was not going to provide an answer to the jury's earlier question, and that only if the jury had any *other* ("further") questions, could it submit them to the court.

Without the benefit of a corrective instruction, the jury may have arrived at the same erroneous legal conclusion that the trial judge reached: that Deck could be convicted even if the jury was not sure whether he intended to commit a lewd act on the day he met Amy. After all, that is precisely what

the prosecutor told the jury in rebuttal. Unquestionably, this scenario would constitute prejudice under the *Brecht* standard.

*Brecht* requires that we determine whether the prosecutor's comments "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotation marks omitted). If the evidence is at least in "virtual equipoise" on this question, such that we have grave doubt as to the harmlessness of the constitutional trial error, the petition must be granted. *See O'Neal*, 513 U.S. at 437–38. The state appellate court's decision established that the prosecutor gave incorrect direction to the jury about an element of California law under which Deck was convicted. The record establishes that the comments were not inadvertent or isolated, and it cannot be questioned they went to the heart of Deck's defense. The lawyers' diametrically opposed statements of the law in closing arguments confused the jury, but a corrective instruction was not given. Nor was the jury's request for clarification answered, and the written jury instructions did not address the subject of the jury's confusion. Despite the significant evidence presented by the State, we cannot say there was overwhelming evidence that Deck intended to commit a lewd act on the specific night in question. Therefore, considering the entire record and viewing it in context, we find ourselves at least in "virtual equipoise as to the harmlessness of the error" of federal law. *See O'Neal*, 513 U.S. at 435.

## CONCLUSION

The prosecutor's misstatements regarding an element of the crime amounted to constitutional trial error under clearly

established federal law as determined by the Supreme Court. *See Darden*, 477 U.S. at 181. We have grave doubt as to whether the error had a substantial and injurious effect or influence on the jury's verdict. *See O'Neal*, 513 U.S. at 437–38. In view of these conclusions, we **REVERSE** the judgment of the district court and **REMAND** with instructions to grant the petition unless the State agrees to grant Deck a new trial within a reasonable period of time. *See Stark v. Hickman*, 455 F.3d 1070, 1080 (9th Cir. 2006).

M. SMITH, Circuit Judge, dissenting:

I respectfully dissent.

The Supreme Court has repeatedly—and often unanimously—reversed our circuit's decisions granting § 2254 relief. For example, in its four most recent terms, the Supreme Court has reversed us thirteen times in cases involving our application of AEDPA, 28 U.S.C. § 2254, ten of which reversals have been unanimous. In my view, this case is yet another candidate for reversal because the majority flouts clear Supreme Court AEDPA precedent in order to justify its holding that a state court's decision is incorrect. In so doing, the majority commits the same error the Supreme Court has criticized our court for making time after time by "collapsing the distinction between 'an *unreasonable* application of federal law' and what [the majority] believes to be 'an *incorrect* or *erroneous* application of federal law.'" *Nevada v. Jackson*, — U.S. —, 133 S. Ct. 1990, 1994 (2013)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (unanimously reversing our grant of habeas relief).[1]

---

[1] *See also Marshall v. Rodgers*, — U.S. —, 133 S. Ct. 1446, 1450 (2013) (per curiam) (unanimously reversing our grant of habeas relief and criticizing our court for "[our] mistaken belief that circuit precedent may be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced"); *Cavazos v. Smith*, — U.S. —, 132 S. Ct. 2, 6–8 (2011) (per curiam) (reversing our grant of habeas relief and stating: "This Court vacated and remanded this judgment twice before, calling the panel's attention to this Court's opinions highlighting the necessity of deference to state courts in § 2254(d) habeas cases. Each time the panel persisted in its course, reinstating its judgment without seriously confronting the significance of the cases called to its attention . . . . Its refusal to do so necessitates this Court's action today."); *Swarthout v. Cooke*, — U.S. —, 131 S. Ct. 859, 862–63 (2011) (per curiam) (unanimously reversing our grant of habeas relief and stating: "The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business."); *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011) (unanimously reversing our grant of habeas relief and criticizing us for "treat[ing] the unreasonableness question as a test of [our] confidence in the result [we] would reach under *de novo* review"); *Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 743–46 (2011) (unanimously reversing our grant of habeas relief and criticizing us for "transpos[ing]" Supreme Court precedent "into a novel context"); *Knowles v. Mirzayance*, 556 U.S. 111, 121–23 (2009) (unanimously reversing our grant of habeas relief and reminding us that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court" (internal quotation marks omitted)); *Brown v. Payton*, 544 U.S. 133, 147 (2005) (reversing our grant of habeas relief and commenting that we had "no basis for . . . concluding that the [state court's] application of [the Supreme Court's] precedents was objectively unreasonable" (internal quotation marks omitted)).

## I.  Background

As the majority explains, Deck engaged in online conversations with a fictitious thirteen-year-old named Amy. The trial record shows that Deck and Amy exchanged sexually suggestive messages and that they planned to meet in person to "date" and to engage in sexual acts. Deck indicated that he would not feel safe meeting for the first time at Amy's home, so they arranged to meet initially at a nearby park.

The day of their planned meeting, Deck told Amy that he was sick, and said: "so no kissing or nothing. [I'm] [j]ust bringing you . . . pie." During their prior online conversations, Deck had repeatedly used the term "pie" as a euphemism for performing oral sex on Amy. Moreover, although Deck stated that he and Amy would not engage in sexual conduct at their first meeting, he also told Amy "I probably won't be able to keep my hands off of you."

On February 18, 2006, Deck drove forty-five minutes to meet Amy at the park near her home. Deck arrived around 8:35 p.m, and when he identified himself to a teenage girl, the police arrested him. A subsequent search of Deck's car revealed, among other things, MapQuest directions to Amy's apartment, six packaged condoms, and a digital camera. Deck was charged with one count of an attempted lewd act on a child under the age of fourteen and tried before a jury.

During his closing argument, the prosecutor argued that Deck was guilty of an attempted lewd act on a child because: (1) if Amy had been a real thirteen-year-old, Deck would have touched her on February 18, 2006, and (2) in light of Deck's express intent to engage in sexual conduct with Amy,

"any touching" would have constituted a lewd act under California law.

Throughout his closing argument, the prosecutor discussed his understanding of attempt under California law. The prosecutor's explanation was not a model of clarity, nor was it entirely accurate. The prosecutor first stated,

> I need to prove to you that [Deck] took a direct, but ineffectual step . . . First of all, his intent was to commit a lewd act. Definitely going down there to engage in a lewd act, lewd contact with Amy. But for that sting operation and Amy being fictitious . . . he would have [engaged in a lewd act].

The prosecutor also stated: "But even if [Deck's] intent was to just meet her, get to know her, break the ice and follow up the next day, the next week, maybe two weekends when mom's gone, again, as long as he took a direct, but ineffectual step towards that goal, that is all I need."

Defense counsel did not object to the prosecutor's closing argument, but instead offered his own explanation of attempt during his closing remarks. Before the jury started its deliberations, the presiding judge correctly instructed the jury concerning the law of attempt, as follows:

> A direct step requires more than merely planning or preparing to commit [the offense] or obtaining or arranging for something needed to commit [the offense]. A direct step is one that goes beyond planning and preparation and shows that a person is putting

his plan into action. A direct step indicates a
definite and unambiguous intent to commit
[the offense].  It is a direct movement towards
the commission of the crime after
preparations are made. *It is an immediate step
that puts the plan in motion so that the plan
would have been completed if some
circumstances outside the plan had not
interrupted the attempt*.

(Emphasis added).

On direct appeal, Deck argued, among other things, that
his conviction should be reversed because the prosecutor
misstated the law of attempt in his closing argument. The
California Court of Appeal for the Fourth District (Court of
Appeal) agreed that the prosecutor was incorrect when he
stated: "[E]ven if [Deck's] intent was to just meet [Amy], get
to know her, break the ice and follow up the next day, the
next week, maybe two weekends when mom's gone, again,
as long as he took a direct, but ineffectual step towards that
goal, that is all I need." The Court of Appeal further
explained that to be guilty of attempt under California law,
"the acts of the defendant must go so far that they would
result in the accomplishment of the crime unless frustrated by
extraneous circumstances."

While the Court of Appeal held that the prosecutor
misstated the law of attempt, the Court nevertheless affirmed
Deck's conviction. In so doing, the Court of Appeal held that
the prosecutor's legal error did not require reversal because
the judge correctly instructed the jury. The Court explained:
"[W]e presume the jury followed [the trial judge's]
instructions . . . . [Thus], the jury knew it was not enough to

plan or prepare to commit a lewd act at a potential *later* rendezvous[, and that] the attempt must consist of 'an immediate step that puts the plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.'" According to the majority, the Court of Appeal's holding is an unreasonable application of clearly established federal law. I respectfully disagree.

## II. Clearly Established Law

The majority contends that Deck is entitled to habeas relief, because (1) the prosecutor inadvertently misstated California law in his closing argument, and (2) the majority has "grave doubt" as to whether this misstatement affected the outcome of Deck's trial. But whether the majority has "grave doubt" about whether a trial error was harmless is only relevant if that error amounts to a constitutional violation. *See O'Neal v. McAninch*, 513 U.S. 432, 435–36 (1995). When a state court has previously determined that no such constitutional error occurred, a federal court "ha[s] no authority" to disrupt the state court's holding unless the state court's holding is "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Parker v. Mathews*, — U.S. —, 132 S. Ct. 2148, 2151 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)).

The Supreme Court has also emphasized that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *See, e.g.*, *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410). "The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application

clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1706–07 (2014) (quoting *Harrington*, 131 S. Ct. at 787).

Importantly, even if a federal court would grant relief to a § 2254 petitioner under a *de novo* review, a state court's denial of relief is not necessarily unreasonable. *Harrington*, 131 S. Ct. at 786. This is so, because "[u]nder § 2254(d), a habeas court must [first] determine what arguments or theories supported or . . . could have supported, the state court's decision," and then "'[*t*]*he only question that matters*' . . . [is] whether it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)) (emphasis added).

The majority's opinion rests on its conclusion that a defendant's right to due process of law is violated when the prosecutor misstates the law in his closing argument, even when the judge correctly instructs the jury on the relevant legal principles. While the majority may believe that federal law *should* protect a criminal defendant from prosecutorial errors of this nature, the Supreme Court has never announced such a rule.

The majority correctly observes that the Supreme Court has stated that prosecutorial misconduct *may* deny a criminal defendant due process of law. But the only Supreme Court decisions the majority cites for this proposition are *Parker v. Mathews*, 132 S. Ct. at 2154–55 (holding that § 2254 relief was not proper because the alleged prosecutorial error was

not a clearly established constitutional violation),[2] *Darden v. Wainwright*, 477 U.S. 168, 179–83 (1986) (same), and *Caldwell v. Mississippi*, 472 U.S. 320, 339–40 (1985) (holding that the Eighth Amendment is violated when the prosecutor *and the court* erroneously instruct the jury that the responsibility for determining whether a death sentence is appropriate lies with the court of appeals and not with the jury).

While *Parker*, *Darden*, and *Caldwell* all state that prosecutorial misconduct could render a trial so unfair as to deny a defendant due process of law, in none of these cases did the Supreme Court actually hold that a prosecutor's error denied a criminal defendant due process, nor did the Court establish what type of misconduct would cause a trial error of constitutional magnitude.

*Critically, the Supreme Court has never held, nor even suggested, that a defendant's constitutional rights are violated where a prosecutor misstates the law in closing argument, but the trial judge correctly instructs the jury. In fact, the Supreme Court has indicated just the opposite.*

The Supreme Court has long held that "[a] jury is presumed to follow" a judge's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). This is true even when a party provides contrary instructions. For example, in *Brown v. Payton*, 544 U.S. 133 (2005), the prosecutor repeatedly and incorrectly argued to the jury that it could not consider certain

---

[2] I note that the majority improperly relies on *Parker*, as it was issued after the Court of Appeal denied Deck's appeal, and it could not therefore have been clearly established federal law at the time of the Court of Appeal's decision.

mitigating evidence in the penalty phase of the defendant's trial for capital murder. The court failed to provide a corrective instruction, but correctly instructed the jury on the applicable law before deliberations began. *Id.* at 146–47. In so doing, the trial court did not instruct the jury that the prosecutor's statements were incorrect. *Id.* It merely provided a correct explanation of the law, which was inconsistent with the prosecutor's erroneous statements. *Id.*

The *Brown* Court (reversing our court, sitting en banc) held that the petitioner was not entitled to relief under § 2254. Although the Supreme Court acknowledged that the trial court "should have [explicitly] advised the jury that it could consider [the mitigating] evidence," it was not unreasonable for the state court to conclude that the jury relied on the judge's correct instructions, rather than on the prosecutor's misstatements. *Id.* at 146–47. As in *Brown*, the state trial court here did not explicitly instruct the jury that the prosecutor was incorrect when he stated that the jury could convict Deck even if it concluded that Deck did not intend to touch Amy for several days or weeks after their initial meeting. Nonetheless, the court offered an instruction that directly contradicted the prosecutor's erroneous explanation, when it explained that a defendant is only guilty of attempt if he "[makes a] direct movement towards the commission of the crime after preparations are made[, by] putt[ing his] plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt."

Despite *Brown*, the majority concludes that the Supreme Court's broad statements that a prosecutor's comments can render a trial constitutionally infirm grant this court authority to set aside the Court of Appeal's holding that no such error

occurred in this case. This conclusion flouts AEDPA's deferential standard.

The majority is correct that under § 2254 even a general rule can be applied in an unreasonable manner. This is so, because "'[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). But, even where a general rule is at issue, "relief is available under § 2254(d)[] . . . if, and only if, it is so obvious that [the] clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706–07 (quoting *Harrington*, 131 S. Ct. at 787). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough*, 541 U.S. at 666).

Under the Supreme Court's case law, it will rarely be "so obvious" that a prosecutorial error violated a defendant's due process rights that there could be no "'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706–07 (quoting *Harrington*, 131 S. Ct. at 787). In *Parker*, the Supreme Court specifically addressed this issue and warned that because the standard for determining whether prosecutorial error amounts to a constitutional error "is a very general one . . . [we must give state] courts more leeway . . . in reaching outcomes in case-by-case determinations [concerning prosecutorial conduct]." *Parker*, 132 S. Ct. at 2155 (internal quotation marks omitted); *see also Harrington*, 131 S. Ct. at 786 ("The more general the rule, the more

leeway courts have in reaching outcomes in case-by-case determinations.").

Here, there is simply no Supreme Court precedent establishing "beyond fairminded disagreement" that Deck's due process rights were violated. The Supreme Court has generally acknowledged that prosecutorial misconduct may, under some circumstances, amount to a due process violation. But the Court has never suggested that a prosecutor's inadvertent misstatement of state law creates such a circumstance, particularly where the judge later provides the jury with a correct explanation of the law. For this reason, the Court of Appeal's holding that the prosecutor's erroneous statements of law did not violate Deck's constitutional rights is not "an unreasonable application of . . . clearly established law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

## III.    Prejudice

Not only does the majority grant habeas relief based on a new constitutional rule that it announces today, but it compounds its error by rejecting the Court of Appeal's reasonable conclusion that any prosecutorial error was not prejudicial. This holding relies on an interpretation of the facts that is tenuous at best.

It is well-settled law that "[a] jury is presumed to follow . . . [and] is [also] presumed to understand" a judge's instructions. *Weeks*, 528 U.S. at 234. Here, it is undisputed that the presiding judge correctly instructed the jury that a defendant is only guilty of attempt if he "[makes a] direct movement towards the commission of the crime after preparations are made[, by] putt[ing his] plan in motion so

that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt." In order to overcome the presumption that the jury understood and followed this instruction, and to show that the prosecutor's statements were prejudicial, the majority adopts a strained interpretation of the record. With respect, the majority's interpretation is neither persuasive nor consistent with the scope of AEDPA review.

The majority notes that during its deliberations, the jury asked the court to "clarify [the] law as it relates to whether defendant did not have to do anything that day only attempt to put it in play." After the jury submitted this question, the jury adjourned for the day. When the jury reconvened, an alternate juror was substituted for a sick juror. The judge properly instructed the jury to begin its deliberations anew, and to submit any outstanding questions to the court. The new jury did not resubmit the original jury's question, and it was never answered.

According to the majority, the jury's unanswered question proves that (1) despite the judge's correct instruction, the jury believed the prosecutor's conflicting statement that it could convict Deck even if it found that Deck did not intend to touch Amy for several days or weeks after their initial meeting, and (2) the jury convicted Deck on these grounds. In my view, the majority's reading is unfounded and does nothing to overcome the presumption that a jury understands and follows a judge's instructions. *Id*.

Inchoate offenses are undoubtedly confusing to a lay jury. Recognizing this potential for confusion, the fairest interpretation of the jury's question is a simple request for confirmation that a defendant may be guilty under the law of

attempt even if he does not complete a substantive offensive—"only attempt[s] to put it in play." Contrary to the majority's reading, nothing about the jury's note indicates that the jury believed that Deck could be guilty of attempt even if he did not intend to touch Amy for several days or weeks following their initial meeting. Rather, the note focuses on what *actions* one must take (i.e., what he must "do") to be guilty of attempt.

The majority points to no other record evidence indicating that the jury relied on the prosecutor's erroneous statements, rather than on the judge's correct explanation of the law. Thus, I find no reason to believe that these statements were prejudicial. Moreover, the record certainly does not show that in reaching this same conclusion, the Court of Appeal acted unreasonably or even erroneously.

## IV.    Conclusion

Relief under § 2254(d) is appropriate only where the state court's holding is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has specifically warned our court that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [we] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court' . . .[, which] would defeat the substantial deference that AEDPA requires [to state courts]." *Jackson*, 133 S. Ct. at 1994. The majority flouts the Supreme Court's clear directive, and in the absence of clearly applicable Supreme Court precedent, concludes that Deck is entitled to § 2254 relief, merely because the majority believes that the Court of

Appeal's decision is incorrect.[3] For these reasons, I respectfully dissent.

---

[3] With regard to our treatment of petitions under § 2254, Justice Scalia recently observed:

> It is a regrettable reality that some federal judges *like* to second-guess state courts. The only way this Court can ensure observance of Congress's abridgement of their habeas power is to perform the unaccustomed task of reviewing utterly fact-bound decisions that present no disputed issues of law. We have often not shrunk from that task, which we have found particularly needful with regard to decisions of the Ninth Circuit. *See, e.g.*, *Cavazos v. Smith*, 565 U.S. 1, 132 S. Ct. 2, — L.Ed.2d — (2011) (per curiam) (reinstating California conviction for assault on a child resulting in death); *Felkner v. Jackson*, 562 U.S. —, 131 S. Ct. 1305, 179 L.Ed.2d 374 (2011) (per curiam) (reinstating California conviction for sexual attack on a 72–year–old woman); *Premo v. Moore*, 562 U.S. —, 131 S. Ct. 733, 178 L.Ed.2d 649 (2011) (reinstating Oregon conviction for murder of a kidnapped victim); *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 173 L.Ed.2d 251 (2009) (reinstating California first-degree murder conviction); *Rice v. Collins*, 546 U.S. 333, 126 S. Ct. 969, 163 L.Ed.2d 824 (2006) (reinstating California conviction for cocaine possession); *Kane v. Garcia Espitia*, 546 U.S. 9, 126 S. Ct. 407, 163 L.Ed.2d 10 (2005) (per curiam) (reinstating California conviction for carjacking and other offenses); *Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) (reinstating California conviction for assault with a deadly weapon); *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (reinstating capital sentence for California prisoner convicted of first-degree murder, attempted murder, and armed robbery).

*Cash v. Maxwell*, — U.S. —, 132 S. Ct. 611, 616–17 (2012) (Scalia, J., dissenting from the denial of certiorari).