**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LUCIO SALVADOR HERNANDEZ,
*Defendant-Appellant.*

No. 14-50214

D.C. No.
2:13-cr-00070-GW-1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted November 9, 2016
Pasadena, California

Filed June 15, 2017

Before: Mary M. Schroeder and Jay S. Bybee, Circuit
Judges, and William E. Smith,* Chief District Judge.

Per Curiam Opinion

---

* The Honorable William E. Smith, Chief United States District Judge
for the District of Rhode Island, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the defendant's conviction for transportation of firearms into his state of residence in violation of 18 U.S.C. § 922(a)(3), and remanded.

The panel agreed with the government that the prohibition on the transportation of guns in § 922(a)(3) is not subject to the heightened willfulness requirement used in some tax and structuring laws. In this case, the government was required to show that the defendant knew his transportation of firearms into California was somehow unlawful, even if he did not know of the specific legal duty, or the particular law, that made it unlawful. The panel held that, viewed in the light most favorable to the prosecution, a reasonable jury could have concluded that the government met its burden.

But given the district court's broad willfulness instruction, and the government's introduction of, and arguments relying on, evidence that the defendant intended to later unlawfully sell the guns he purchased, the panel held that there is a substantial likelihood that the defendant was convicted for the act of transporting guns with the intent to commit a later crime rather than the one with which he was charged. The panel could not conclude on this record that this constitutional error was harmless beyond a reasonable doubt.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Alexandra W. Yates (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Yasin Mohammad (argued), Assistant United States Attorney, Asset Forfeiture Section; Lawrence S. Middleton, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

Lucio Salvador Hernandez appeals his conviction for transportation of firearms into his state of residence in violation of 18 U.S.C. § 922(a)(3). The Indictment charged Hernandez with transporting guns from the state of Arizona to his state of residence, California. In order to convict Hernandez of this crime, the government was required to prove that his violation was "willful," i.e., that the defendant acted with knowledge that the charged conduct (transporting the firearms into his state of residence) was unlawful. Hernandez argues on appeal that the evidence was insufficient to prove that the specifically charged conduct was done "willfully." Moreover, Hernandez contends that because the district court allowed the government to introduce evidence of other (uncharged) criminal acts allegedly committed by Hernandez in connection with the firearms at issue, combined with a broad interpretation of the willfulness instruction contemplated by *Bryan v. United*

*States*, 524 U.S. 184, 194–95 (1998), the jury may have convicted him without finding the requisite level of culpability. For reasons we explain below, we agree. We therefore reverse and remand for a new trial.

## BACKGROUND

On January 20, 2011, Hernandez and his wife drove to Arizona from California to transfer the title on his car. While in Arizona, Hernandez went with his stepfather to a gun show, where Hernandez purchased five guns from a federal firearm licensee: two Glock Model 19 9mm pistols, two Jimenez Arms Model J.A. 380 .380 caliber pistols, and one Hi-Point Model C9 9mm pistol. This is a purchase he could not have made in California, where the law required a ten-day waiting period and prohibited the simultaneous purchase of multiple weapons. On a form required by the Bureau of Alcohol, Tobacco & Firearms ("ATF") to purchase guns, Hernandez reported Arizona as his state of current residence and his address as his mother's house in Arizona.

Hernandez had lived in Arizona for about two years after moving from California in 2008. In 2010, he and his wife moved first to Idaho for work, and later to Pittsburg, California to help care for his wife's sister. The couple lived rent free in a spare bedroom of Hernandez's sister-in-law. Hernandez maintained his Arizona driver's license, but bought and registered a used car in California and applied for a California driver's license.

On May 28, 2011, the Pittsburg Police Department recovered, in the possession of other persons, two of the guns Hernandez had purchased in Arizona. Police had earlier recovered guns Hernandez had purchased, which are not at

issue in this case, in the possession of other individuals in Los Angeles. After recovering the two guns purchased in Arizona and determining that Hernandez was a California resident, ATF agents sought a search warrant for Hernandez's home. The ATF agents determined Hernandez was a California resident after surveillance of Hernandez's sister-in-law's home; observations of Hernandez's car; and examinations of his tax, employment, and Department of Motor Vehicle records. When ATF agents searched the home, the only weapon found was a shotgun in Hernandez's closet. When the agents informed Hernandez they were investigating him for unlawfully transporting guns as a California resident from Arizona to California, Hernandez voluntarily responded that he believed he was an Arizona resident and intended to return there. When questioned concerning the whereabouts of the guns he had purchased, Hernandez responded that some had been stolen, and some he had buried in the desert to keep safe. A grand jury indicted Hernandez on February 1, 2013, charging him with a single count of illegal transportation of firearms into his state of residence, in violation of 18 U.S.C. § 922(a)(3).

During the pretrial proceedings, a dispute arose as to what the government needed to prove to establish Hernandez's guilt. The government argued that, under *Bryan*, Hernandez was guilty of willfully transporting guns into California so long as he intended to violate some law in connection with the transportation of the firearms into California. The district court appeared to accept the government's theory and its reading of *Bryan*. For example, the district judge stated that "[the government needed] to show that [Hernandez is] doing something willfully which is illegal but it doesn't necessarily have to be the particular transportation that he knows is illegal. It could be something else." The district court thus

agreed to give an instruction, based on *Bryan*, that may have permitted the jury to find Hernandez guilty even if he did not know that his act of transporting guns into California was illegal. The court rejected an instruction that would have connected the required willfulness to the act of transporting the guns into California.

Hernandez was convicted after a jury trial in December 2013. In addition to evidence of Hernandez's knowledge of California's strict firearms laws, such as the prohibition on the simultaneous purchase of multiple firearms and the required waiting period, and evidence of the effort Hernandez had to expend in order to obtain the guns (a 12-hour drive each way to the gun show), the government presented evidence of Hernandez's arguable commission of uncharged crimes related to the firearms at issue. For example, the government introduced testimony from an ATF agent and a Pittsburg Police officer. The ATF agent testified that a "straw purchaser" is someone who purchases a firearm for "someone that cannot possess a firearm for whatever reason," and stated that the defendant responded "I have no comment" when asked about the five firearms he purchased that were not recovered in his possession. The Pittsburg Police officer testified that, after the ATF searched Hernandez's home, Hernandez called to report that approximately 20 firearms were stolen from his home 6 months prior. In addition, the government presented a California gun store owner, Ron Kennedy, as an expert on gun distribution. Kennedy testified that a person like Hernandez, with a history of legally purchasing guns in California, likely would have known about California gun laws; that the types of guns purchased were not the types of guns a collector would purchase; and that the types of guns Hernandez purchased frequently turned up in ATF trace requests, i.e., requests generated by a gun's

use in a crime, which Kennedy understood meant the guns were no longer in the possession of their original lawful purchaser.[1]   The government also introduced evidence to show that several of the guns Hernandez had purchased in Arizona were recovered by police officers in the possession of third parties, implying that he had sold the guns illegally upon his return.[2]   In closing, the government argued, in part, that this evidence was sufficient to show that Hernandez acted willfully because he intended to do "something" the law forbids, even if that "something" did not include the actual transportation of guns into his state of residence.[3]   His

---

[1] Among other issues raised on appeal, Hernandez argues that this testimony was improperly admitted into evidence.  We do not reach these issues for the reasons discussed below.

[2] During pretrial proceedings, Hernandez objected to this evidence on the basis that it was unduly prejudicial and in violation of a pretrial stipulation.  After the district court ruled that it was admissible, the government and the defendant reached a second stipulation that sanitized the evidence.  We do not reach Hernandez's claim of error on this point.

[3] To illustrate, the government argued:

> In proving willfulness, ladies and gentlemen, the person need not be aware of the specific law or rule that his conduct may be violating but he must act with the intent to do something the law forbids.  For instance, if he falsifies information on a form in transporting the firearms, that's something the law forbids.  If he intentionally goes and tries to get around the California laws and purchases multiple firearms to bring back to California, that's something the law forbids.

The government also argued to the jury that evidence showing Hernandez's unlawful distribution of guns to third parties in California helped establish his "willfulness," "consciousness of guilt," and "bad purpose."

argument to the jury was that he was an Arizona resident. The jury found Hernandez guilty.

Following the jury's guilty verdict, Hernandez was sentenced to three months in prison. This timely appeal followed.

## DISCUSSION

## I. Sufficiency of the Evidence and Meaning of *Bryan*

Hernandez's primary argument is that the government did not present sufficient evidence for a reasonable jury to find that his violation of 18 U.S.C. § 922(a)(3) was willful, as required under 18 U.S.C. § 924. We reverse a conviction on grounds of insufficient evidence if "in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

As we explain below, however, the evidence presented in this case was sufficient to prove willfulness; had it been presented in the context of a narrower instruction we would find no error on this point. We conclude that, given the district court's broad jury instruction and the government's theory of the case, it is not clear beyond a reasonable doubt that the jury actually found that Hernandez had willfully committed the charged conduct.

To begin, we turn to the Supreme Court's analysis in *Bryan*. There the defendant was charged with "willfully engaging in the business of dealing firearms" without a license. *Bryan*, 524 U.S. at 189 (citing § 922(a)(1)(A)). The defendant's sole argument on appeal was that the evidence

was insufficient to prove that he sold guns "willfully" because he did not specifically know about the federal licensing requirement. *Id.* at 190–91. The defendant contended that the licensing requirement was similar to technical tax and antistructuring laws that imposed sanctions on only those defendants who knew of the specific legal duties they had to follow. *Id.* at 194 (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991); *Ratzlaf v. United States*, 510 U.S. 135, 138, 149 (1994)).

The Supreme Court disagreed. The Court noted that *Cheek* and *Ratzlaf* "involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct . . . 'carv[ing] out an exception to the traditional rule' that ignorance of the law is no excuse." *Id.* at 194–95 (citing *Cheek*, 498 U.S. at 200). The Court declined to extend that exception to the licensing law at issue, holding that the government needed to show only that the "defendant knew that his conduct was unlawful" but not that it was unlawful specifically because of the federal licensing requirement. *Id*. at 195. That the defendant knew his selling of guns was unlawful could not have been doubted, the Court noted, because there was evidence that he had used straw purchasers to acquire the guns, told the straw purchasers that he would file the serial numbers off the guns before he sold them, and conducted his business on Brooklyn street corners known for drug dealing. *Id* at 189.

We agree with the government here that, just as with the licensing requirement at issue in *Bryan*, the prohibition on the transportation of guns in § 922(a)(3) is not subject to the heightened willfulness requirement used in some tax and antistructuring laws. We have applied the heightened standard only when "the criminal conduct is contained in a

regulation instead of in a statute, and when the conduct is not obviously unlawful." *United States v. Henderson*, 243 F.3d 1168, 1172 (9th Cir. 2001). In *United States v. Ogles*, we clarified that the word "willful" as used in § 924, which supplies the culpability required for § 922(a)(3), is the lower standard of willfulness. 406 F.3d 586, 590 n.1 (9th Cir. 2005), *reh'g en banc granted*, 430 F.3d 1221 (9th Cir. 2005); *see United States v. Ogles*, 440 F.3d 1095, 1097 (9th Cir. 2006) (en banc) (adopting the relevant portion of the original panel opinion). Thus, the government did not need to prove that Hernandez, while en route to California from Arizona, knew he was violating the particular federal statute against transporting firearms into one's state of residence.

In *Bryan*, it was apparent that the defendant knew that the act with which he was charged—the selling of firearms without a license on Brooklyn street corners—was unlawful. *Bryan*, 524 U.S. at 189. There simply was no evidence that he knew *why* it was unlawful, i.e., he was not aware that a federal law required him to possess a license before selling firearms. *Id.* In this case, the government was required to show that Hernandez knew his transportation of firearms into California was somehow unlawful, even if he did not know of the specific legal duty, or the particular law, that made it unlawful.

Viewing the evidence in the light most favorable to the prosecution here, a reasonable jury could have concluded that the government met its burden under *Bryan*. The government presented evidence that the same gun show where Hernandez purchased the firearms in Arizona had been close to his home in California the week before; that someone, like Hernandez, with experience in purchasing guns in California would have been aware that California law allows the purchase of only

one gun at a time and requires a ten-day waiting period; and, with respect to the purchase at issue in this case, that Hernandez drove 12 hours to Arizona, purchased the firearms, and within 24 hours drove back to California with the guns.  All of this circumstantial evidence suggests that Hernandez knew his transportation of the guns into California was unlawful.  Had the jury convicted on this evidence alone, we would likely find no error on this issue, even with the broad charge given by the district court.  But the government went further here in its effort to prove Hernandez's guilty mind, and when the government takes this path, more is required to ensure the jury is not led astray.  We turn to this next.

## II.  The Instruction and Evidence of Other Crimes

As discussed above, the government presented evidence suggesting Hernandez's intent to commit other (uncharged) crimes, some of which came after he returned to California. At the close of trial, the district court gave the following instruction on willfulness that was approved by the Supreme Court in *Bryan*:

> A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating.  But he must act with the intent to do something that the law forbids.

Hernandez, in turn, proposed the following instruction that more clearly identified not only the standard, but the nature of the conduct that the government had to prove was willful:

> An act done willfully is one which is done knowingly and purposely and with the intent to do something that the law forbids, that is the bad purpose to disobey the law. Therefore, in order to establish a willful violation in this case, the government must prove beyond a reasonable doubt that, when Hernandez transported firearms purchased in Arizona to California, he knew that his conduct was unlawful and he intended to disobey the law.

Both the actual instruction and the defendant's proposed instruction accurately stated the law of *Bryan*. Hernandez's proposed instruction, however, made clear that Hernandez could have acted willfully *only if* he knew that bringing the guns to California was somehow unlawful. The *Bryan* instruction given made no such explicit connection and could have been misunderstood by the jury to permit conviction even if Hernandez intended to commit some later crime.

There are many cases where the instruction given, which is taken directly from *Bryan*, is perfectly appropriate. However, where there is a serious risk that the jury might impute the willfulness to commit an uncharged crime to that required to prove the mens rea for the charged crime, more is required to ensure the government meets its burden of proof and the jury performs its duty. It is a longstanding precept of the common law that a person cannot be convicted of one crime on the basis of an intent to commit another. There

must be a "concurrence of an evil-meaning mind with an evil-doing hand." *Morissette v. United States*, 342 U.S. 246, 251 (1952); *see also Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994) ("It is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act. . . . [The defendant must have] intended [to commit the crime] at the time that she [did]."); Wayne R. LaFave, 1 Subst. Crim. L. § 6.3(d) (2d ed. 2016) ("One problem is that of the necessary concurrence of the mental fault with the act or omission which is the basis for liability. . . . [M]ental states are not interchangeable between crimes; if one sets out with intent to cause the harm covered in crime A and then inadvertently causes the harm covered by crime B, neither crime A nor crime B has been committed."). The instruction suggested by defense counsel here would have sufficed, as would have any other effective articulation of this distinction and direction as to the jury's use and proper consideration of evidence proffered by the government pursuant to Rule 404(b) of the Federal Rules of Evidence.

Hernandez contends that in this case, he was targeted as a gun trafficker and that the jury was allowed to convict him, not for his willful, unlawful transportation of weapons, but for his intent to commit the future crimes of unlawfully selling those weapons. There is sufficient support for this contention to cast doubt upon the validity of the jury's verdict. We note three salient examples.

First, the district court emphatically rejected defense counsel's contention that Hernandez could not be convicted on the basis of a purpose "to commit an entirely separate crime at an entirely different time and place," stating, "No, yes, he can." Although the exchange took place outside the presence of the jury, it demonstrates the court's approval of

the government's relying on future crimes to establish intent. Second, having received the green light from the district court, the government relied heavily on evidence that Hernandez committed crimes separate and distinct from the actual transportation of firearms. The government presented evidence, for instance, that Hernandez, when he was arrested, no longer had any of the purchased handguns, and the government was permitted to introduce evidence that the guns were later found in the possession of other people, despite a stipulation barring evidence of "recovery location information." Third, over defense counsel's objection on relevancy grounds, the district court permitted a gun dealer to testify as an expert on gun distribution that the types of guns Hernandez purchased were often unlawfully sold in California, and permitted the government to argue that the evidence of Hernandez's intent to unlawfully distribute firearms to other individuals was relevant to establish Hernandez's willful violation of § 922(a)(3).

This is not to suggest that the government is not permitted to prove willfulness by circumstantial evidence, including evidence of other bad acts or crimes under Rule 404(b) of the Federal Rules of Evidence. Indeed, the government may, and doubtless will, do so in many cases because so rarely is there evidence of what a defendant thought at the moment he committed a criminal act; his intent must often be inferred from his surrounding conduct. What is critical, however, is the distinction between proof of the intent to commit the other uncharged crimes and proof of the intent to commit the charged crime: evidence tending to show intent to commit other crimes may be circumstantial evidence of intent to commit the charged crime, but it is not a substitute for it.

We hold that the broad jury instruction, combined with the evidence of the commission of later crimes and the government's argument to the jury, resulted in significant prejudice to Hernandez. The rule from the common law requires that a defendant's mental state and act coincide for a conviction to be valid. *See Morrisette*, 342 U.S. at 251. Neither *Bryan* nor §§ 922(a)(3) and 924 deviate from this rule. Here, the combination of the broad jury instruction and the government's introduction of evidence that Hernandez intended to later unlawfully sell the guns he purchased, raises a substantial likelihood that he was convicted for the act of transporting guns with the intent to commit a later crime rather than the one with which he was charged. This substantial likelihood requires reversal under the due process clause of the Fifth Amendment. *See Deck v. Jenkins*, 814 F.3d 954, 986 (9th Cir. 2016), *amending* 768 F.3d 1015 (9th Cir. 2014) (holding that the "prosecutor's misstatements regarding an element of the crime amount[s] to constitutional trial error" if the misstatements were central to the case and were not corrected by the trial court's instructions to the jury).

We recognize that "a constitutional trial error will not warrant reversal if it was harmless beyond a reasonable doubt." *Id.* at 985 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). While it is possible on this record the jury found that Hernandez transported firearms willfully, we cannot conclude this beyond a reasonable doubt. We therefore cannot conclude on this record that the constitutional trial error was harmless beyond a reasonable doubt.

Because we reverse Hernandez's conviction on this ground, we do not address the other issues he raises on appeal, leaving these issues to the trial court on remand.

**REVERSED** and **REMANDED**.